UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **MARTIN HOLMES, et al.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) NO. 3:19-cv-00466 |
| | ) |
| **LM INSURANCE CORPORATION, LIBERTY INSURANCE CORPORATION, LIBERY MUTUAL FIRE INSURANCE COMPANY, SAFECO INSURANCE COMPANY OF AMERICA, et al.,** | ) ) ) ) ) ) |
| | |
| **Defendant.** | |

# MEMORANDUM OPINION

Settlement agreements, like all other contracts, are to be honored and enforced when made between informed parties and met with consideration. The Settlement Agreement in this case (Doc. No. 66-2) was negotiated by highly skilled and competent counsel over several months, signed by the parties and their counsel, approved by this Court, and incorporated into the Final Judgment (Doc. No. 84). When this Court retained jurisdiction to enforce the terms of the Settlement Agreement, it did not expect to have to rule upon such a flagrant attempt to violate its terms. For the reasons that follow, Defendants' Motion to Enforce the Settlement Agreement and Final Judgment Order (Doc. No. 93) is granted.

## BACKGROUND

In 2019, several plaintiffs, represented by counsel, sued Liberty Mutual Insurance Corporation, Liberty Insurance Corporation, Liberty Mutual Fire Insurance Company, and Safeco Insurance Company of America (collectively, the "Defendants") alleging the Defendants

1

improperly depreciated the value of future labor from actual cash value ("ACV") payments to the plaintiffs. On May 4, 2020, the parties informed the Court they had entered settlement negotiations to resolve plaintiffs' claims as well as claims of a class of individuals who received ACV payments from the Defendants, with the complained-of depreciation, for structural losses to property located in Tennessee. (Doc. No. 40 ¶¶ 23, 25, 166). Over the next four months, counsel for the parties negotiated the terms of a class settlement, providing the Court with two interim reports on their progress. (Doc. Nos. 55, 63). On August 31, 2020, counsel from both parties submitted the proposed Settlement Agreement to the Court, along with declarations from Peterson, McWherter and Snodgrass stating their belief that the Agreement was fair and should be adopted. (Doc. Nos. 65-66). The Court held a telephonic hearing on September 24, 2020, after which it ordered the parties to submit a joint statement concerning the estimated total payout of all claims by October 2, 2020. (Doc. No. 68). The parties did so. (Doc. No. 69). On October 6, 2020, the Court issued an Order of Preliminary Approval of Class Action Settlement. (Doc. No. 70). On February 5, 2021, the Court issued its Final Judgment and Order, which explicitly incorporated the terms of the Settlement Agreement and retained jurisdiction to enforce those terms. (Doc. No. 84).

The Settlement Agreement binds "each of the Parties hereto, upon each of their agents, attorneys, employees, successors and assigns, and upon all other Persons claiming any interest in the subject matter hereof through any of the Parties hereto, including any Class Member." (Doc. No. 66-2 § 19.4). Through endorsing the Settlement Agreement, the parties and their attorneys agreed that:

> This Agreement, the negotiations leading to the Settlement, administration of the Settlement, and any pleadings, motions, or other document related in any way to the Agreement (excluding any orders entered by the Court) shall not be offered into evidence in the Action or in any other case or proceeding: (a) in support of or in opposition to a motion to certify a contested class against Defendants; or (b) as an admission or concession of liability or wrongdoing by Defendants.

2

(Id. § 15.2). They further agreed that:

> Confidential Information shall not be publicly disclosed by Class Counsel or other attorneys for Representative Plaintiffs in this Action to any persons other than those identified in the agreed protective order or this Agreement, and shall not be used other than in this Action in connection with the Settlement.

(Id. § 16.1). In limiting the use of Confidential Information (as defined in the Settlement Agreement), the parties and their attorneys explicitly agreed that "Confidential Information shall not be used by Class Counsel or anyone employed with, retained by, or otherwise associated with Class Counsel in any other litigation, current or future, unless independently obtained through discovery in such other litigation." (Id. § 16.3).

On June 24, 2021, Class Counsel in this case, specifically Erik D. Peterson, J. Brandon McWherter, and T. Joseph Snodgrass, filed a lawsuit against American Economy Insurance Company, Liberty Mutual Personal Insurance Company, and Safeco Insurance Company of Indiana in the United States District Court for the District of Massachusetts. Glasner v. American Economy Ins. Co., No. 1:21-cv-11047-RWZ (D. Mass). They later filed a similar case in the United States District Court for the Western District of Texas. Cortinas v. Liberty Mut. Pers. Ins. Co., No. 5:22-cv-00544-OLG (W.D. Tex.). Class Counsel has noticed two identical depositions pursuant to Fed. R. Civ. P. 30(b)(1) in both of those cases, for:

> The person(s) working for a Liberty Mutual Group company and that was directly responsible for obtaining a class list as set forth in Paragraph 5.2 of the Settlement Agreement in the lawsuit entitled Holmes, et al. v. LM Insurance Corporation, et al., No. 3:19-cv-00466.

(see Doc. Nos. 89-5 and 89-7 (the "Class List Deposition")), and for:

> The person(s) that worked for a Liberty Mutual Group company and that directly supervised the persons and/or process for calculating the amounts at issue in Paragraphs 7.1, 7.1.1, 7.1.2, and 7.1.3 of the Settlement Agreement in the lawsuit entitled Holmes, et al. v. LM Insurance Corporation, et al., No. 3:19-cv-00466.

(see Doc. Nos. 89-6 and 89-8 (the "Calculation Agent Deposition")).  The Defendants in those cases have objected to the deposition notices through filing motions for protective orders.  (See Glasner Doc No. 77; Cortinas Doc. No. 43).  The court overseeing the Cortinas case granted the motion for a protective order in part, striking the Calculation Agent Deposition but allowing the Class List Deposition to proceed.  (See Doc. No. 94 at 15; Doc. No. 95 at 6).  Magistrate Judge Henry J. Bemporad, who issued that order, "orally stated that he wants to know if this Court issues a conflicting decision so that he may further consider the issue."  (Doc. No. 95 at 6).[1]  Upon review of the Glasner docket, it appears the court has not yet considered Liberty Mutual's Motion for Protective Order.

## LEGAL STANDARD

A settlement agreement is a contract.  Bamerilease Capital Corp. v. Nearburg, 958 F.2d 150, 152 (6th Cir. 1992).  Under Tennessee law, "[w]here a contract is clear and unambiguous, [the] parties' intentions are to be determined from the four corners of the contract."  Baptist Physician Hosp. Org., Inc. v. Humana Mil. Healthcare Servs., Inc., 368 F.3d 894, 898 (6th Cir. 2004) (quoting Bokor v. Holder, 722 S.W.2d 676, 679 (Tenn.Ct.App.1986)).  "[A] contract's provisions must be interpreted in the context of the entire contract, viewed from beginning to end and all its terms must pass in review, for one clause may modify, limit or illustrate another."  D & E Const. Co. v. Robert J. Denley Co., 38 S.W.3d 513, 519 (Tenn. 2001).  See In re Shumate, 39 B.R. 808, 813–14 (Bankr. E.D. Tenn. 1984) ("An interpretation giving meaning and effect to every provision is favored over one leaving a portion of the instrument useless or inexplicable.").

---

[1] The Court relies on Liberty Mutual's characterization of Magistrate Judge Bemporad's statement, as the transcript of that hearing will not be publicly docketed until January 2024.  See Cortinas Doc. No. 57.

ANALYSIS

Liberty Mutual alleges that Class Counsel's Class List Deposition and Calculation Agent Deposition notices in the Glasner and Cortinas cases violate the terms of the Settlement Agreement for two reasons: (1) the notices seek to use details concerning "the administration of the Settlement Agreement" to support the plaintiffs' motions for class certification (Doc. No. 89 at 6); and (2) the notices seek the disclosure and use of Confidential Information (id.). Class Counsel responds with four arguments: (1) Class Counsel is not a party to the Settlement Agreement and it is not enforceable against them (Doc. No. 94 at 2-4, 6); (2) the Settlement Agreement allows Class Counsel to independently pursue discovery in other lawsuits (id. at 5-6); (3) if the Settlement Agreement prevents Class Counsel from noticing the Class List and Calculation Agent Depositions, it violates Tennessee rules of ethics and professional conduct (id. at 7-13); and (4) the Court should exercise comity by allowing the Texas and Massachusetts courts to determine whether the depositions can proceed (id. at 14-16). The Court responds to each of these arguments in turn.

I. **The Plain Language of the Settlement Agreement Prohibits the Deposition Notices**

The Class List and Calculation Agent Deposition notices violate Section 15.2 of the Settlement Agreement. That provision prohibits the parties or their counsel from using "the administration of the Settlement Agreement" to support motions for class certification in other cases. The Class List Deposition notice seeks to depose "[t]he person(s) that worked for a Liberty Mutual Group company and that was directly responsible for obtaining a class list as set forth in Paragraph 5.2 of the Settlement Agreement." Doc. Nos. 89-5 and 89-7. Section 5.2 of the Settlement Agreement concerns notice to the class of the settlement, and requires the Defendants to "conduct a reasonable search of their records and provide to the Administrator for each Person

5

reasonably believed to be a potential Class Member" several pieces of information "reasonably required to *administer the Settlement*." Doc. No. 66-2 § 5.2 (emphasis added). The plain language of Section 15.2 shows that it concerns work to be performed by the defendants following execution of the Settlement Agreement in order to administer its terms. Similarly, the Calculation Agent Deposition Notice seeks to depose "[t]he person(s) that worked for a Liberty Mutual Group company and that directly supervised the persons and/or process for calculating the amounts at issue in Paragraphs 7.1, 7.1.1, 7.1.2, and 7.1.3 of the Settlement Agreement." Doc. Nos. 89-6 and 89-8. Section 7 of the Settlement Agreement is titled "*Claims Administration* and Payments." (Doc. No. 66-2 § 7) (emphasis added). If the title of the section is not an obvious enough indicator that it concerns the administration of the Settlement Agreement, the content of the section is. Like Section 5.2, Sections 7.1, 7.1.1, 7.1.2, and 7.1.3 govern work to be performed by the defendants following execution of the Settlement Agreement to administer its terms. Thus, the plain language of the Settlement Agreement subjects both Sections 5.2 and 7.1 (and its sub-sections) to Section 15.2, which prevents Class Counsel from using the administration of the Settlement Agreement to support their class certification motions in other cases.

## II. Class Counsel's Arguments to the Contrary Are Unavailing

Class Counsel's four arguments as to why the Class List and Calculation Agent Deposition notices do not violate the Settlement Agreement are easily rejected.

### A. Class Counsel is Bound by the Settlement Agreement

First, Class Counsel argues that because they are not "Parties" as defined by the Settlement Agreement, the agreement is not enforceable against them. (Doc. No. 94 at 2-4, 6). This argument contravenes the express language that "[t]he terms of this Agreement are and shall be binding upon each of the Parties hereto [and] upon each of their . . . *attorneys* . . ." (Doc. No. 66-2 § 19.4)

6

(emphasis added). Furthermore, "Class Counsel" is a defined term in the Settlement Agreement that specifically includes Peterson, McWherter, and Snodgrass. (Id. § 2.9). That term is expressly used in the section limiting use of Confidential Information "by Class Counsel or anyone employed with, retained by, or otherwise associated with Class Counsel in any other litigation, current or future, unless independently obtained through discovery in such other litigation." (Id. § 16.3). And it is of no moment that the term does not appear in Section 15.2, prohibiting individuals subject to the agreement from using the "administration of the Agreement" to support motions for class certification in future cases. The "Parties" as defined in the agreement will not be filing similar cases or seeking class certification in those cases—their claims are resolved by the Settlement Agreement. (See id. § 9). To read Section 15.2 as only applying to the Parties and not to their attorneys is to render the section meaningless, something that black letter contract law prevents the Court from doing. See In re Shumate, 39 B.R. 808, 813–14 (Bankr. E.D. Tenn. 1984) ("An interpretation giving meaning and effect to every provision is favored over one leaving a portion of the instrument useless or inexplicable."). Rather, the logical way to interpret the agreement is to read Section 15.2 and Section 19.4 together, which plainly state that Class Counsel is bound by Section 15.2.

> **B.   The Settlement Agreement Does Not Prevent Class Counsel from Conducting Independent Discovery**

Class Counsel argues that the Settlement Agreement permits them to independently discover Confidential Information in future litigation. (Doc. No. 94 at 5-6). Here, they are correct. But the Class List and Calculation Agent Deposition notices do not independently seek discovery of Confidential Information that was disclosed during the course of this litigation. Rather, they attempt to short-cut the discovery process in the Glasner and Cortinas cases by requiring Liberty Mutual's employees to testify concerning their administration of the Settlement Agreement. Class

7

Counsel is free to notice the deposition of a Liberty Mutual representative pursuant to Fed. R. Civ. P. 30(b)(6) concerning "the technological and data processing capabilities of the Liberty Mutual Group defendants and, further, how these capabilities may justify class certification." (See id. at 14). What they cannot do is reference specific sections of a confidential Settlement Agreement in their deposition notices and question witnesses concerning how they composed the class list and administered claims in this litigation.

        C.        **The Settlement Agreement Does Not Violate Ethics Rules**

Class Counsel argues that interpreting the Settlement Agreement to prevent them from issuing the deposition notices would violate Tennessee Supreme Court Rule 8 and Tennessee Rule of Professional Conduct 5.6(b). (Doc. No. 94 at 7). Those rules prevent attorneys from entering into agreements "in which a restriction on the lawyer's right to practice is part of the settlement of a client controversy. Tenn. R. Prof. Conduct 5.6(b). The Court is mindful that it possesses the power to "invalidate the bargains of parties on grounds of public policy, Baugh v. Novak, 340 S.W.3d 372, 382 (Tenn. 2011), but if it does so it must act with "great delicacy," id. Here, it is not necessary for the Court to exercise that power at all because the plain meaning of the Settlement Agreement does not conflict with Tennessee's ethics rules. As Class Counsel concedes, the agreement expressly allows them to independently seek discovery of Confidential Information in other cases. (Doc. No. 66-2 § 16.3).

None of the sources Class Counsel exhaustively cites say differently. The Settlement Agreement does not prevent Class Counsel from bringing other lawsuits against the Defendants, the scenario applicable to several of Class Counsel's citations. See Duque v. Martinez Distrib. Corp., 2006 WL 8433300 at *1, n.1 (S.D. Fla. Dec. 21, 2006); Cardillo v. Bloomfield 206 Corp., 988 A.2d 136, 140 (N.J. Super. Ct. App. Div. 2010); State ex rel Verizon W. Va. Inc. v. Matish,

8

Case 3:19-cv-00466    Document 96    Filed 10/23/23    Page 8 of 10 PageID #: 1049

740 S.E.2d 84, 97-98 (W. Va. 2013); Earnings Perf. Grp., Inc. v. Quigley, 124 F. App'x 350, 353-54 (6th Cir. 2005); Tour Tech. Software, Inc. v. RTV, Inc., 2018 WL 3682483, at *5-6 (EDNY Aug. 2, 2018). Nor are the Liberty Mutual Defendants arguing that Class Counsel is prohibited from independently discovering information and materials exchanged in this case during the course of discovery in the Glasner and Cortinas cases, as the defendants argued in the Hu-Friedy case cited by Class Counsel. Compare Hu-Friedy Mfg. Co., Inc. v. Gen. Elec. Co., 1999 WL 528545, at *2-3 (N.D. Ill. Jul. 19, 1999) ("GE's strained reading of the word 'use' in the protective order and cooperation agreement would operate to prevent [counsel's] representation of Hu–Friedy and any other plaintiff with ULTEM-related claims against GE."). And none of the out-of-jurisdiction state bar association ethic opinions prevent parties from agreeing, as they did here, to restrict the use of information pertaining to settlement administration in this case. Finally, it goes without saying that the Settlement Agreement bears no relation to termination agreements between attorneys and their former employers, rendering the rest of Class Counsel's case citations irrelevant to the Court's analysis here. See Arena v. Schulman, LeRoy & Bennett, 233 S.W.3d 809, 812-13 (Tenn. Ct. App. 2006); Spiegel v. Thomas, Mann, & Smith, P.C., 811 S.W.2d 528, 530 (Tenn. 1991); Jacob v. Norris, McLaughlin & Marcus, 607 A.2d 142, 154 (N.J. 1992).

**D.     This Court Retained Jurisdiction to Enforce the Settlement Agreement.**

A court retains jurisdiction over enforcement of a settlement agreement if it explicitly retains jurisdiction in its final judgment, or if it expressly incorporates the settlement agreement into its judgment. RE/MAX Intern. Inc. v. Realty One, Inc., 271 F.3d 633, 641-42 (6th Cir. 2001). Here, the Court did both. (See Doc. No. 84 §§ 2-3). Class Counsel does not dispute that the Court has jurisdiction to decide Liberty Mutual's motion; instead, it argues that the Court should cede its jurisdiction to the Cortinas court (and presumably the Glasner court) to determine whether the

9

deposition notices violate the Settlement Agreement. (Doc. No. 94 at 14). The Court declines to do so. The Settlement Agreement is confidential and sealed on this Court's docket; neither the Cortinas or Glasner courts have access to it. It makes little sense to ask these courts to guess whether Class Counsel's deposition notices violate an agreement they cannot read. Furthermore, the Court understands Magistrate Judge Bemporad in the Cortinas case has "orally stated that he wants to know if this Court issues a conflicting decision [concerning the deposition notices] so that he may further consider the issue." (Doc. No. 95 at 6).

## CONCLUSION

For the foregoing reasons, the Court holds that Class Counsel's Class List and Calculation Agent Deposition notices in the Glasner and Cortinas cases violate the Settlement Agreement. An appropriate Order will be entered.

```
                                    _____
                                    WAVERLY D. CRENSHAW, JR.
                                    CHIEF UNITED STATES DISTRICT JUDGE
```